UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYQUAN HILL, | : |
|     Plaintiff, | : |
| | : |
| v. | :    3:24cv180 (OAW) |
| | : |
| CO GARDNER, et al., | : |
|     Defendants. | : |

## INITIAL REVIEW ORDER

Self-represented plaintiff Tyquan Hill, who currently is in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint under 42 U.S.C. § 1983.[1] ECF No. 1. Plaintiff claims that he was subjected to unconstitutional treatment while he was housed at New Haven Correctional Center ("NHCC"). He asserts these claims against Correction Officer Gardner, Correction Officers Doe, and Nurse Jane Doe.[2] Plaintiff has sued Defendants in their individual capacities for damages.

The Prison Litigation Reform Act requires federal courts to review complaints

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the public DOC website under the inmate search function indicates that Plaintiff is a sentenced inmate currently housed at MacDougall-Walker Correctional Center. *See* Department of Correction: Offender Information Search, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=410991 (last visited July 29, 2025).

[2] Under Rule 10(a) of the federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P 10(a). Plaintiff's case caption names John Doe 2 and 3, and "4 medical N.H.C.C. Jane Does." ECF No. 1 at 1. Under the section of his complaint form entitled "The Parties to This Complaint," Plaintiff names as defendants Officer Gardner, "Medical doctor/nurse," and two John Doe Correction Officers. *Id.* at 2-3. In a document attached to the complaint form, Plaintiff lists as defendants Officer Gardner, correctional officers John Doe 2-7, Lieutenant Jane Doe, and a "short white female nurse." *Id.* at 12. Thus, it is not clear whom Plaintiff intends as defendants. For purposes of initial review, the court considers as Defendants the individuals against whom Plaintiff's allegations appear to assert claims. *See Imperato v. Otsego County Sheriff's Depart.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016) ("[C]ourts have found pro se complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants.") (quoting *JCG v. Ercole*, No. 11 Civ. 6844(CM)(JLC), 2014 WL 1630815, at *16 (S.D.N.Y. Apr. 24, 2014) (alteration in original). If Plaintiff decides to amend his complaint, the court encourages him to identify as many of the defendants by name as he can.

1

brought by prisoners seeking relief against a governmental entity or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  In accordance therewith, the court has reviewed all factual allegations in the complaint and has conducted an initial review of them.

## I.   FACTUAL BACKGROUND[3]

Plaintiff alleges that on August 30, 2023, while he was housed at NHCC, Plaintiff was brutally attacked by several correctional officers after he questioned an officer who was taking his television, hot pot, and shoes.  Defendant Gardner, accusing Plaintiff of being a "tough guy," instructed him to enter the search room.  When Plaintiff complied, Defendant Gardner punched him in the face.  The John Doe defendants rushed into the room to join the attack on Plaintiff.  Plaintiff tried to cover himself on the floor while they punched him, kicked him, hit him with their walkie talkies, pulled his hair out, and stomped on his face and head.  Defendant Jane Doe 1, a lieutenant, stood and watched while Plaintiff was brutally assaulted and made no effort to stop except to say at one point, "Okay that's enough."

After being physically attacked, Plaintiff was sprayed in the mouth and all over his face with a chemical agent.  The officers placed him in handcuffs, removing a splint on

---

[3] The court relays the facts as Plaintiff alleges them in the section of his complaint entitled "Cause of Action."  ECF No. 1 at 13–15.  These facts are considered to be true for the purpose of this review.

his wrist. Despite Plaintiff's expressions of pain, the officers bent his wrist back.

Plaintiff claims that he has suffered a split and bruised lip, loss of hair, a split eyebrow, serious jaw pain requiring a mouth guard, a concussion, bruised ribs, back pain and exacerbation of his prior wrist injury. He explained his pain to a nurse, but she told him to get himself together and walked away.

Plaintiff was supposed to go to court the morning after his beating, and he commented that he would tell his lawyer about the beating. But the correctional staff held him back the next morning, saying that he was not going to court with his "face looking like that."

Plaintiff's pain became so intense that he could not walk and had to be escorted to a doctor in a wheelchair, though he apparently was not treated by that doctor. He also asserts that he was placed on a list for a visit to an outside medical facility for his jaw pain, but he represents that he has not yet been treated for these injuries.

Plaintiff also complains that he asked for surveillance videos to be preserved, but when his lawyer attempted to obtain the videos, the prison staff claimed ignorance.

## II. **DISCUSSION**

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the

3

conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). The court construes Plaintiff's complaint to assert constitutional claims arising from the use of excessive force, deliberate indifference to his medical needs, and denial of his ability to attend his court date.

### A. Fourteenth Amendment Excessive Force

Because publicly available information indicates that Plaintiff was an unsentenced inmate at the time relevant to this action, the court analyzes his claims of excessive force and deliberate indifference under the substantive due process standard of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment."). Under that standard, prison guards may use *some* force "to preserve internal order and discipline and to maintain institutional security." *See Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). Thus, to state a claim for the use of excessive force, a pretrial detainee must "show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 397. A plaintiff may prevail by showing that actions taken against him "are not 'rationally related to a legitimate nonpunitive governmental purpose,' or that the actions 'appear excessive in relation to that purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 561).

4

Plaintiff asserts that he was beaten because he questioned the confiscation of his personal property. These allegations suggest that Defendant Gardner and John Does 2-7 subjected Plaintiff to an objectively excessive use of force without legitimate penological reason. Thus, Plaintiff's allegations are sufficient to permit him to proceed on a Fourteenth Amendment misuse of force claim for damages against these defendants in their individual capacities.

Prison officials also can be held liable under Section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene if one officer fails to prevent another officer from committing a constitutional violation and "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

Plaintiff asserts that Lieutenant Jane Doe stood by and watched the beating without intervening for some period before finally calling off the officers. This allegation is sufficient to permit a claim to proceed against her for failing to intervene.

5

### B. Fourteenth Amendment Deliberate Indifference

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment requires a showing of two elements: (1) that the plaintiff was subjected to an objectively serious condition or medical need; and (2) that the defendant acted "with at least deliberate indifference" to the challenged condition or need. *Darnell*, 849 F.3d at 29. With respect to the objective prong, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . ." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). A serious medical need will be shown by allegations of "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Deliberate indifference "can be established by either a subjective or objective standard . . . ." *Charles*, 925 F.3d at 87 (citing *Darnell*, 849 F.3d at 35). This means the plaintiff must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Thus, a detainee "must prove that an official acted intentionally or recklessly, and not merely negligently." *Id.* at 36.

    **1**. ***Indifference by Correctional Staff***

Plaintiff's allegations indicate that he sustained objectively serious injuries as a result of the correctional officers' attack, use of the chemical agent, and exacerbation of

his wrist injuries. For initial pleading purposes, these allegations are sufficient to suggest that Officer Gardner and Officer Does 2-7 treated Plaintiff with indifference to his health and safety. Accordingly, the court permits Plaintiff to proceed on his Fourteenth Amendment claims based on indifference to his health and safety against Officer Gardner and Officer Does 2-7 in their individual capacity for damages. Likewise, the court permits Plaintiff to procced against Lieutenant Jane Doe for indifference to his health and safety (or failure to intervene in any indifference to Plaintiff's health and safety).

### 2.   *Indifference by Medical Staff*

Plaintiff alleges that the "white female nurse" or Nurse Jane Doe walked away from him after he told her that he needed help due to being "jumped," and that the next day he was in such pain that he required a wheelchair. These allegations are sufficient to support a Fourteenth Amendment medical indifference claim against Nurse Doe.[4]

Plaintiff refers to a comment by unspecified medical staff that he had "nothing wrong with him." ECF No. 1 at 12. However, Plaintiff cannot state a plausible damages claims under the Fourteenth Amendment based on a mere comment by an unidentified individual. Likewise, Plaintiff's allegation that he was escorted to a doctor but still received no medical treatment is not sufficient to state a plausible Fourteenth Amendment damages claim. Plaintiff has not alleged facts that describe how any defendant acted intentionally or recklessly to ignore or interfere with his medical treatment after he was escorted to the doctor.

---

[4] Plaintiff also references other unnamed nurses: one cleaned his eyebrow and placed a band-aid on it to stop the bleeding; and another examined his wrist while he was in his cell and demanded that Plaintiff's splint be returned. None of these allegations suggests that these individuals ignored or acted with indifference to his medical needs.

7

Thus, the court permits Plaintiff to proceed on a Fourteenth Amendment indifference damages claim against that Nurse Doe only.

### C. Access to Courts/Retaliation/Right to Counsel

Plaintiff asserts that he was supposed to go to court the day after the assault, and that he had told his attackers that he would tell his lawyer of their conduct. The morning of his court appointment, though, he was told he would not be going because of the state of his face, which the court infers reflected the abuse suffered the day before.

These allegations could support several constitutional claims: violations of the First Amendment to the United States Constitution based upon the failure to deliver Plaintiff to his court date, and for retaliating against him for exercising his right to free speech; and a violation of the Sixth Amendment right to counsel, as well. But Plaintiff has neglected to identify any of the individuals who prevented his transport to court. He refers only vaguely to "they," but the court cannot allow a claim to proceed against a pronoun. Accordingly, any such claims must be dismissed, but without prejudice to amendment with this deficiency corrected.

If Plaintiff chooses to amend his complaint, he should bear in mind that both a Sixth Amendment claim and an access-to-courts claim require him to identify the purpose for which he was to appear in court.

### D. Violations of Prison Rules and Policies

Plaintiff complains about Lieutenant Doe's failure to recognize that his injuries should "automatically" be photographed under DOC policy, and that he has not been provided with video footage of the incident. These allegations implicate violation of a

prison rule or policy. But "violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).[5]

### III.   CONCLUSION

For the foregoing reasons, the court enters the following orders:

(1) The case may proceed on the following claims for damages:

(a) Fourteenth Amendment violation based on the use of excessive force against Correction Officer Gardner, Officer Does 2-7, and Lieutenant Jane Doe.

(b) Fourteenth Amendment violation based on indifference to Plaintiff's health and safety against Correction Officer Gardner, Officer Does 2-7, and Lieutenant Jane Doe.

(c) Fourteenth Amendment violation against Nurse Doe for indifference to Plaintiff's medical needs.

All other claims and defendants are DISMISSED.

(2) If Plaintiff wishes to, he may submit an amended complaint on or before **September 30, 2025. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

---

[5] Plaintiff may seek to obtain video evidence related to this case through discovery. If he determines that the evidence was destroyed despite his valid preservation requests, Plaintiff may move for sanctions due to spoliation of evidence.

If Plaintiff wishes to proceed only on those claims noted above, he may file a notice on the docket stating as much, at which point the case will proceed immediately to service. If nothing is filed on the docket by **September 30, 2025,** the court will assume that Plaintiff wishes to proceed only on these claims.

(3) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of July, 2025.

                /s/
                OMAR A. WILLIAMS
                UNITED STATES DISTRICT JUDGE